[Cite as *State v. Gintz*, 2016-Ohio-1048.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| STEVEN GINTZ | : | Case No. 2015 AP 09 0050 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the New Philadelphia
                                  Municipal Court, Case No.
                                  CRB1500547


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 March 14, 2016


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

TARA WRIGHT-TIMBERLAKE                     RICHARD W. HINIG
150 East High Avenue                       217 North Broadway Street
Suite 113                                  New Philadelphia, OH  44663
New Philadelphia, OH  44663

*Farmer, P.J.*

{¶1} On May 6, 2015, appellant, Steven Gintz, was charged with one count of aggravated menacing in violation of R.C. 2903.21. Said charge arose from an incident between appellant and Alexander Wardell over a cell phone which started when Mr. Wardell was at a Planet Fitness.

{¶2} A bench trial commenced on July 24, 2015. By judgment entry filed July 30, 2015, the trial court found appellant guilty, and sentenced him to one hundred eighty days in jail, one hundred seventy days suspended in lieu of community control. A nunc pro tunc judgment entry was filed on August 28, 2015 to correct a clerical error.

{¶3} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶4} "THE EVIDENCE DID NOT SUPPORT DEFENDANT-APPELLANT'S CONVICTION. THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONVICTING DEFENDANT-APPELLANT."

I

{¶5} Appellant claims the evidence does not support his conviction for aggravated menacing as Mr. Wardell never believed appellant would cause him serious physical harm. We disagree.

{¶6} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997-Ohio-260.

{¶7} Appellant was convicted of aggravated menacing in violation of R.C. 2903.21 which states:

No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other

person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶8}    Appellant's arguments center on the testimony of Mr. Wardell, arguing he was never in fear for his safety.   Mr. Wardell testified to the following (T. at 6, 7-8, respectively):

Q. Okay, was there an incident that occurred between you and Mr. War - - excuse me, you and Mr. Gintz on May Fifth, Two Thousand Fifteen?

A. There was.

Q. Okay, where did that incident occur?   Kind of tell us what happened on that day.

A. I was in Planet Fitness working out with Melissa Gintz's sister and I don't know where Steven called me and was yelling, threatening me, wanted me to fight, come out to his house.  I said I wasn't coming out to his house and he said that he was going to bring a gun, shoot me.  I then called the officer, an officer came out, he had sent me text messages throughout the, throughout the night.  I had pretty much just kind of brushed it off, I knew a cop was in route so whenever the officer got there I was giving my statement and he called again.  I put it on speaker phone and the cop was right there, took a recording, I believe, and witnessed everything.

***

Q. Okay, when did you begin to take him seriously, like you two may actually have an altercation, did that ever occur?

A. After the second time he called again and was still continuing to threaten me and was continuing to say that he was going to shoot me with a gun so that's whenever I called the officer.

Q. And were you still in Planet Fitness, were you in the parking lot?

A. I stepped outside to make the phone call.

Q. Okay, so you called police and are in the middle of talking to them when Mr. Gintz calls you again; is that correct?

A. That correct.

Q. Okay, did you believe, did you know if he had a gun or access to a gun?

A. Yeah, I know that he has had guns before and that he does hunt and so I know he's, he's an outdoor person.  We have guns.

Q. Okay, did you think that he may actually come and shoot you or bring his gun?

A. I could tell that he was intoxicated.  A lot of people do stupid things when they're intoxicated.  I thought maybe that being that he was under the influence it could have come across as an actual thought of actually doing it.

{¶9} After the police officer arrived, appellant called Mr. Wardell and the call was recorded. State's Exhibit A. The recording of the call was played and Mr. Wardell explained the following on cross-examination (T. at 12 and 14, respectively):

Q. And in this phone call, the recording that we hear, we hear Mr. Gintz saying that if you come out to his house he is going to shoot you, right?

A. No. He wanted me, when he said that it was trying to get me to come back out to fight him that night that he was threatening that he was going to shoot me.

Q. You never knew that he was actually at Sheetz, did you?

A. No, I did not

***

Q. And when Steven says to you come out here, did you ever go out to where he was?

A. No, I did not.

Q. Why not?

A. Why would I trespass and put my life in jeopardy? I have a daughter to live for, I'm trying to be responsible.

Q. You think if you would have met up with Steven face to face that he would have kicked your ass?

***

A. I believe that there would have been a fight, yes.

Q. That wasn't my question.  My question is do you think if he would have come over there, and you would have met up face to face, that he would have kicked your ass?

A. That's hard to say.

{¶10}  On re-direct, Mr. Wardell testified he believed he was in physical danger from appellant.  T. at 15.  Mr. Wardell believed "he was going to shoot me."  *Id.*

{¶11}  As stated above, the responding officer overheard the telephone call and recorded it.  T. at 18.  The officer heard appellant threaten that he was going to shoot Mr. Wardell.  *Id.*

{¶12}  Although appellant's counsel chooses to characterized the encounter between appellant and Mr. Wardell as a contest between "two young, virile, testosterone-fueled, jerks" (Appellant's Brief at 6), the evidence establishes that appellant was the aggressor with repeated texts and calls to Mr. Wardell to the point where Mr. Wardell was sufficiently scared and called the police.

{¶13}  Upon review, in reading the transcript as a whole, we find sufficient evidence that Mr. Wardell believed appellant would cause him serious physical harm to support the finding of guilty of aggravated menacing.  We find no manifest miscarriage of justice.

{¶14}  The sole assignment of error is denied.

{¶15} The judgment of the New Philadelphia Municipal Court of Tuscarawas County, Ohio is hereby affirmed.

By Farmer, P.J.

Gwin, J. and

Delaney, J. concur.

SGF/sg 224